STATE v. WOODRUFF

[99 N.C. App. 107 (1990)]

No. 8918SC1019

(Filed 19 June 1990)

1. **Bigamy § 2.1 (NCI3d)— minister authorized to perform marriages—sufficiency of evidence of bigamy**

Evidence was sufficient to support a charge of bigamy where it tended to show that defendant and a woman other than his wife took part in a marriage ceremony conducted by

the assistant pastor of defendant's church; the assistant pastor led the singing and preached to the regular congregation when defendant was away; although the assistant pastor was not "an ordained minister" or a "magistrate," he was "authorized by his church" to perform marriages; and the minister of the church, defendant, requested and authorized the assistant pastor to perform the marriage ceremony in question. N.C.G.S. § 51-1.

**Am Jur 2d, Bigamy §§ 11, 55, 56.**

**2. Criminal Law § 401 (NCI4th) — private counsel assisting prosecutor — no abuse of discretion**

Defendant failed to show abuse of discretion by the trial judge in allowing a private attorney to participate in the prosecution of the case, since defendant never expressed an actual intent to call the lawyer, who prepared a verified complaint for divorce for defendant's wife, as a witness; any testimony defendant might have elicited from the attorney could have been presented in other ways; and defendant was never prevented from calling the attorney as a witness or from presenting any relevant or material testimony.

**Am Jur 2d, Prosecuting Attorneys § 13.**

Judge EAGLES dissenting.

APPEAL by defendant from *Sitton (Claude), Judge.* Judgment entered 13 April 1989 in Superior Court, HENDERSON County. Heard in the Court of Appeals 29 May 1990.

Defendant was charged in a proper bill of indictment with bigamy in violation of G.S. 14-183.

The evidence presented by the State tends to show the following: Defendant and Willie Mae Woodruff were duly married on 15 August 1956 in Thomaston, Georgia. The couple moved to Henderson County in 1960, and defendant became the pastor of the Faith Revival Center in Hendersonville, N.C., the position defendant held at the time of his trial.

In 1981, defendant began preaching polygamy at his church. On one occasion, defendant discussed his intention to marry another woman with his wife stating, "he got this revelation that a man could have all the wives that he wanted. . . ."

On 5 June 1986 at about 4:00 in the afternoon, defendant telephoned Willie Mae Woodruff, his wife, and told her that he

and Anita Partin (who was currently married to Arlow Partin) were going to be married at his church that evening at 7:00 p.m. Shortly before 7:00 p.m., defendant and Willie Mae Woodruff left their house to drive to the church. They stopped at Bojangle's and met Anita Partin who followed the Woodruffs to the church in her own car.

When they arrived at the church, the Assistant Pastor, Roland McMahan, was there. With respect to Roland McMahan, Willie Mae Woodruff testified, "[h]e was [the] Assistant Pastor. He preached whenever my husband was out of town. He carried on the chores that my husband would ordinarily carry on." McMahan led the group into the sanctuary where he performed a ceremony and pronounced defendant and Anita Partin to be husband and wife. With respect to the marriage ceremony, Willie Mae Woodruff testified as follows: "[They] went on into the sanctuary, then he (Roland McMahan) got in front of the pulpit and he started the ceremony and they went through the ceremony and . . . at the end, he said, 'According to the Revelation, God is revealed in this time of polygamy' and then he pronounced Bobby Lee Woodruff and Anita Partin husband and wife." Willie Mae Woodruff also testified that Roland McMahan asked defendant if he took Anita Partin to be his wife and Anita Partin if she took defendant to be her husband, and both replied that they did, and Roland McMahan pronounced them "man and wife." With respect to whether she had consented to this marriage, Willie Mae Woodruff testified, "I told him (defendant) I didn't understand it, but the way he preaches a woman is under total submission to a man; a woman doesn't have a say so, but the man does. Because I was a Minister's wife, I felt it my duty to do what he said to do."

Following the ceremony, defendant and Anita Partin left the church in her car to go to Carolina Landing on their honeymoon. Willie Mae Woodruff and her granddaughter joined them the following day. All four of them returned to Hendersonville two days later; and then defendant, Willie Mae Woodruff, and Anita Partin left together to go on a two week "honeymoon" to Gatlinburg and Nashville, Tennessee.

Following this "honeymoon," the trio returned to Hendersonville, and Anita Partin moved into the house owned and shared by defendant and Willie Mae Woodruff. Anita Partin continued to live there for eighteen months during which time defendant

would sleep with her one night and Willie Mae Woodruff the following night. Willie Mae Woodruff's grandson and granddaughter were also living at the house at this time.

On 26 December 1987, defendant and Willie Mae Woodruff separated, and he and Anita Partin moved out of the house and into an apartment. Then on 11 April 1988, Willie Mae Woodruff had defendant indicted for bigamy because "[H]e kept coming to [her] house tormenting [her] and bossing [her] around and everything and [she] just couldn't take it anymore. . . ." She filed for divorce ten days later on 21 April 1988.

The jury found defendant guilty of bigamy. From a judgment imposing a prison sentence of three years to be suspended for five years except for an active sentence of forty days, defendant appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Elisha H. Bunting, Jr., for the State.*

*Blanchard & Edney, by J. Michael Edney, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant contends the trial court erred in denying his motion to dismiss. He argues the evidence was not sufficient to support the charge of bigamy. His only contention on appeal is that the evidence does not disclose that defendant and Anita Partin were married by "an ordained minister of any religious denomination, [a] minister authorized by his church, or . . . a magistrate" as provided in G.S. 51-1. The evidence, however, discloses that the marriage ceremony between defendant and Anita Partin was conducted by Roland McMahan, who was the Assistant Pastor of defendant's church and who led the singing and preached to the regular congregation when defendant was away. Although McMahan was not "an ordained minister" or a "magistrate," he was "authorized by his church" to perform marriages. Indeed, the evidence is clear that the minister of the church, defendant, requested and authorized McMahan to perform the marriage between defendant and Anita Partin. We hold that the evidence is sufficient in all respects to take the case to the jury and to support the verdict.

[2] Defendant also contends the trial court erred "in allowing attorney Edwin Groce to appear as counsel with the State thereby

denying defendant the right to call Groce as a witness." Defendant argues that the ruling by the trial court denied him his constitutional right to call Edwin Groce as a witness. We disagree.

Defendant correctly concedes that "it is a matter within the discretion of the trial judge to determine whether a private attorney may assist the District Attorney in the prosecution of a case." *State v. Best*, 280 N.C. 413, 186 S.E.2d 1 (1972). We note further that the trial judge's discretion in allowing or disallowing private prosecution will be interfered with only upon a showing of abuse of that discretion. *State v. Boykin*, 298 N.C. 687, 259 S.E.2d 883 (1979).

In the present case, defendant has failed to show abuse of discretion by the trial judge in allowing a private attorney to participate in the prosecution of his case. At trial, defendant objected to the State's motion to have Mr. Groce appear as Associate Counsel for the State on the grounds that he might need to call Groce as a witness for the defense in order to respond to questions he intended to ask Willie Mae Woodruff on cross-examination concerning a verified complaint for divorce signed by the witness and prepared by Groce. Defendant never expressed an actual intent to call Groce as a witness, and as the trial judge pointed out, defendant could have presented that testimony in other ways. Defendant, however, conducted a thorough cross-examination of Willie Mae Woodruff and chose to ask only one question pertaining to her filing for divorce. Defendant was never prevented from calling Groce as a witness or from presenting any relevant or material testimony. Therefore, we find no error in the trial judge's ruling allowing attorney Edwin Groce to assist in the prosecution of this case.

Based on exceptions 2, 3, 4, and 5 noted in the record, defendant contends the court erred in allowing "Winnie Mae" (Willie Mae) Woodruff to testify that: (1) McMahan, defendant and Anita Partin "stood and talked for a few minutes and then they went in before the altar and had the marriage ceremony," (2) "when they went on into the sanctuary, then he (McMahan) got in front of the pulpit and he started the ceremony and they went through the ceremony and I don't remember everything that was said in the ceremony, but I do know at the end, he said, 'According to the Revelation, God is revealed in this time of polygamy' and then he pronounced Bobby Lee Woodruff and Anita Partin husband

and wife," and (3) that McMahan asked Bobby Woodruff if he took Anita Partin to be his wife. At trial, defendant argued that the testimony was "hearsay," and he advances the same contention on appeal.

Rule 801(c) of the North Carolina Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Clearly, these statements were not offered to "prove the truth of the matter asserted." This contention borders on the frivolous.

Next, based on twenty-eight exceptions noted in the record, defendant contends the trial court erred in admitting testimony of "Winnie Mae" (Willie Mae) Woodruff, Bobby Lee Woodruff, and Anita Partin because it was irrelevant and immaterial. In his brief, he contends the testimony excepted to, relating to the operation of the church and the doctrine of the church, was irrelevant and immaterial and prejudiced defendant because the purpose of this evidence was to "attempt to link this defendant to the television evangelist Jim Baker [sic] and his PTL Club." Obviously, the testimony challenged by these exceptions was not irrelevant or immaterial because it tended to show that McMahan was "authorized by his church" to perform marriages.

Finally, assignment of error No. 25 is set out in the record as follows: "The defendant was tried and convicted upon a defective indictment." This assignment of error is not supported by an exception noted in the record. Thus, no question is presented for review. The bill of indictment is in all respects proper.

Defendant received a fair trial free from prejudicial error.

No error.

Judge JOHNSON concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent.

In my judgment the record is devoid of evidence that Roland McMahan had the requisite authority from his church to perform

marriages. Testimony from McMahan and the defendant unequivocally stated that McMahan was not ordained and had no authority to perform weddings. The testimony of the wife Willie Mae Woodruff focused on the purported ceremony itself and the defendant's announced belief in Biblical authority for polygamy and did not deal with whether McMahan was authorized by his church to perform marriage ceremonies. The fact that defendant may have believed that polygamy was scripturally permissible, that he intended to marry a second person while still married, and that a purported ceremony was conducted, does not supply the missing element of proof in this criminal prosecution. There is no evidence that McMahan was "authorized by his church" as required by G.S. 51-1. Accordingly, I dissent and would vote to vacate the conviction.